# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

**CIVIL ACTION NO. 17-273-DLB**

**JIMMY LEE PENNINGTON**                                                   **PLAINTIFF**

vs.                       **MEMORANDUM OPINION & ORDER**

**NANCY A. BERRYHILL, Commissioner**
**of Social Security Administration**                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jimmy Lee Pennington originally filed an application for disability insurance benefits (DIB) on January 15, 2013.[1] (Tr. 147). In a decision dated August 22, 2014, Administrative Law Judge (ALJ) Donald A. Rising denied Plaintiff's application. (Tr. 147-156) (the 2014 decision). On August 28, 2015, Plaintiff protectively filed a new application for benefits, alleging disability beginning on August 14, 2012. (Tr. 12). Specifically, Plaintiff alleged that he was unable to work due to neck, back, and leg pain, along with depression and borderline intellectual functioning. (Tr. 149). Plaintiff was forty-seven years old at the time of filing. (Doc. # 11-1 at 2).

---

[1]     Plaintiff also asserted a period of disability claim. (Tr. 12).

Plaintiff's August 28, 2015 application was denied initially, and again on reconsideration. *See* (Tr. 206, 211). At Plaintiff's request, an administrative hearing was conducted on March 16, 2017, before ALJ Rising. (Tr. 21). At the hearing, Plaintiff, through counsel, amended his disability onset date to August 28, 2015, the protective filing date of the second application. (Tr. 12). On May 9, 2017, the ALJ ruled that Plaintiff was not entitled to benefits. (Tr. 21). This decision became the final decision of the Commissioner on September 5, 2017, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

Plaintiff filed the instant action on October 5, 2017, alleging the ALJ's decision was "not supported by substantial evidence," was "contrary to law," and "applied incorrect standards." (Doc. # 2 at 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11 and 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided

the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

In the context of successive applications, the Sixth Circuit has established that "the principles of *res judicata* can be applied against the [SSA] Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* (citing *Lively v. Sec'y of Health & Human*

*Servs.*, 820 F.2d 1391 (4th Cir. 1987)); *see also Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam) (holding that a second ALJ was precluded from reconsidering whether a plaintiff could perform his past relevant work).

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing states within the Sixth Circuit to follow *Drummond* by applying *res judicata* to a prior assessment of a claimant's residual functional capacity (RFC) as well as other findings required in the sequential evaluation process for determining disability. This Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29,771-01, 1998 WL 274052 (June 1, 1998). Accordingly, a prior ALJ's RFC determination must not be altered unless new and material evidence is presented showing that the plaintiff's condition has significantly changed. *See Drummond*, 126 F.3d at 842. The plaintiff bears the burden of showing that his condition has worsened to the point that he is no longer able to perform substantial gainful activity. *Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

### B. The ALJ's Determination

The ALJ, applying *Drummond*, 126 F.3d 837, and the five-step sequential evaluation process, concluded that Plaintiff was not disabled, as the record contained no new or material evidence that justified altering the prior 2014 decisional findings. (Tr. 12).

4

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2015, the amended disability onset date. *Id.* at 14. At Step Two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, obesity, and borderline intellectual functioning. *Id.* at 15. The ALJ determined that Plaintiff's chronic obstructive pulmonary disease (COPD) and depression were non-severe impairments. *Id.* At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 16.

At Step Four, the ALJ found that Plaintiff possessed the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [H]e can lift no greater than fifteen pounds; perform no more than occasional overhead lifting; sit no greater than ninety minutes continuously without ten to fifteen minutes to stand and walk; and no sustained cervical posturing at extremes; no more than frequent climbing of ladders, ropes, and scaffolds; no exposure to vibration; and is limited to work requiring only simple instructions/tasks accommodating ninth grade literacy.

(Tr. 17). Based upon this RFC and relying on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to perform his past relevant work as a roof bolter. *Id.* at 20. Therefore, the ALJ proceeded to Step Five, where he determined that there were other jobs that exist in significant numbers in the national economy that the Plaintiff could perform. *Id.* at 20-21. Specifically, the ALJ determined that the Plaintiff could perform the following occupations: inspector/tester/sorter, machine operator, or hand packer. *Id.* at 21. Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the date of Plaintiff's application through the date of the decision. *Id.*

**C.     Analysis**

Plaintiff advances three arguments in his Motion for Summary Judgment. (Doc. # 11). First, Plaintiff advances a general argument that the ALJ's RFC determination was not supported by substantial evidence. *Id.* at 2. Second, Plaintiff argues that the ALJ failed to properly apply the standard of review for successive applications. *Id.* (citing *Drummond*, 126 F.3d 837). Finally, Plaintiff appears to argue that the ALJ erred in assessing Plaintiff's credibility with respect to his subjective complaints of pain. *Id.* The Court will consider each argument in turn.

### *1.     The ALJ's RFC findings are supported by substantial evidence.*

Plaintiff's first argument asserts that the ALJ's RFC determination was not supported by substantial evidence. The RFC determination is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). At its core, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is required to incorporate only those limitations that he or she finds credible into the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey*, 987 F.2d at 1235).

The Plaintiff argues that the ALJ's "selective inclusion of only portions of the pertinent evidence which cast the claimant in an unfavorable light was improper" and

6

effectively circumvented evidence that showed that Plaintiff's medical problems have become "more severe." (Doc. # 11-1 at 16, 18). This argument amounts to an allegation that the ALJ cherry-picked evidence to support his RFC finding. Such an allegation "is seldom successful," however, "because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). That is not the role of this Court. "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, [courts] do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Despite the "quite deferential" standard of review, the ALJ must still make all determinations "based upon the record in its entirety." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). When constructing a claimant's RFC, the ALJ must take into account all relevant medical and other evidence. 20 C.F.R. § 404.945(3). Assessing the record as a whole "helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Rogers*, 486 F.3d at 249. If the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349.

Here, the ALJ took all relevant medical evidence into account and considered the record as a whole. Plaintiff alleges that in making the RFC determination, the ALJ failed to address the October 11, 2015 Radiology Report of Dr. Matthew Vuskovich, which

showed parenchymal abnormalities consistent with pneumoconiosis. *See* (Doc. # 11-1 at 18; Tr. 667). Dr. Vuskovich's Radiology Report also showed no pleural abnormalities consistent with pneumoconiosis, no costophrenic angle obliteration, no diffuse pleural thickening, nor any other abnormalities. (Tr. 667). Plaintiff's reliance on this single document does not vitiate the ALJ's thorough review of all relevant medical evidence. The ALJ's decision noted that Plaintiff "reported that he experiences shortness of breath only at night," and, despite having a diagnosis of COPD, "treatment records show normal lung examinations" and "clinically, his lungs were clear." (Tr. 15). The Court's role in reviewing the determination of the ALJ is not to re-weigh the evidence, and while the ALJ weighed the evidence contrary to how the Plaintiff preferred, the ALJ did not fail to analyze the evidence in the record. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013). Thus, the ALJ did not engage in any type of improper cherry-picking. Instead, he properly considered the record as a whole.

Plaintiff also asserts that in making the RFC determination, the ALJ failed to "establish that the claimant suffered from psychiatric impairments which are well documented throughout the records based on records from Cumberland River Comprehensive Care Center," particularly the observations of its outpatient therapist Janet Nantz, LPCC. (Doc. # 11-1 at 17). The record shows, however, that the ALJ took this evidence into account, noting that "[m]entally, the claimant has a history of evaluation/treatment at the Comprehensive Care Center for situational depression." (Tr. 15). In fact, the ALJ thoroughly considered the observations of Janet Nantz, LPCC:

> On March 13, 2017, therapist, Janet Nantz, LPCC, penned a letter on claimant's behalf in which she stated in essence that the claimant was being seen for depression with an initial diagnosis of Adjustment Disorder with Depressed Mood which was later changed to Recurrent, Severe Major

8

> Depression. She stated over the past years of treatment claimant had benefitted from care but that there had been barriers affecting progress including feelings of worthlessness because he cannot work/provide for his family or do many simple household chores. Second, she stated claimant was having a difficult time finding a purpose for his life without employment but that he had been counseled regarding this issue as to activities to fill his time. She went on to mention the issues outlined herein along with other worries typical to the general population. She noted he had worked hard to keep his regular appointments and to work toward meeting treatment goals, but had struggled at times due to the severity of his symptoms, having limited support available, and due to family stressors but that he had been compliant with medications.

(Tr. 15).

Nonetheless, the ALJ's detailed analysis pointed to substantial evidence that Plaintiff's RFC remained at the previously adjudicated level since the prior hearing decision dated August 22, 2014. *See* (Tr. 147). In reaching his determination that there was no new and material evidence to justify altering the prior decision, the ALJ discussed and evaluated relevant medical evidence, including observations obtained from Plaintiff's treating or examining medical sources since August 22, 2014. For example, the ALJ noted that, while "[o]n August 28, 2015, an Axis I diagnosis of major depression was provided," Plaintiff's "mental status examination was completely normal." (Tr. 15). Further, Plaintiff "reported being active socially with family and diagnosis/treatment did not change. In fact, he reported some diminished symptoms of depression with medication." *Id.*

The ALJ further found that LPCC Nantz's letter conflicted with other evidence in the record:

> In terms of mental functioning claimant instituted treatment around mid-2015 when he presented as depressed and irritable but with clear and coherent thought, normal perception and cognition. He related having depression and anxiety for a couple years, but worse just in the preceding month with the threat of his daughter going to jail, and he and his wife were

> now caring for their two-year-old grandson. [ ]. He reported in October and November 2015 he filled his time visiting his father, playing with his grandson and watching TV. He was cooperative, alert and attentive. [ ]. Thereafter, despite the disingenuous letter of LPCC Nantz that she had been seeing claimant since 2013 [ ], no treatment was received during 2016 and claimant only reinstituted treatment in February 2017 [ ], the month preceding the disability hearing.

(Tr. 19). Based upon the ALJ's review of the record, therefore, the ALJ found that the new evidence relied upon by Plaintiff to assert that circumstances had changed since the denial of his first application was not credible. *See Irvin*, 573 F. App'x at 502 (stating that the ALJ is required to incorporate only those limitations that he or she finds credible into the RFC assessment).

It is not the Court's role to re-weigh the credibility of LPCC Nantz or to perform a *de novo* review of the evidence. *See Bass*, 499 F.3d at 509 ("When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, [courts] do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility"). Where, as here, the ALJ's decision is supported by substantial evidence, the Court must affirm the decision. *Listenbee*, 846 F.2d at 349. Accordingly, the Court finds no error in the scope of the ALJ's analysis.

### 2. *The ALJ's RFC determination did not violate Drummond or Dennard.*

Plaintiff's second argument asserts that the ALJ's RFC determination violated the standards set forth in *Drummond* and *Dennard* by failing to impose the same, and in Plaintiff's belief, more stringent, limitations that the previous 2014 determination imposed. Specifically, Plaintiff asserts that the 2014 decision had "much more severe restrictions" because it found that Plaintiff "could only sit for 90 minutes." (Doc. # 11-1 at 19). Plaintiff

also asserts that the 2014 decision "also would require any work with no more than a ninth grade literacy level" with limitations in the area of following simple job instructions, interacting appropriately with the public, supervisors and co-workers and responding appropriately to usual work situations and changes in routine. *Id.* Plaintiff argues that "[t]hese restrictions were not addressed in the ALJ's [subsequent] decision" and therefore remand is required under *Dennard*, 907 F.2d 598 and *Drummond*, 126 F.3d 837. (Doc. # 11-1 at 19).

Plaintiff's position is factually incorrect. While the ALJ's May 9, 2017 decision did not mirror the precise language of the 2014 decision verbatim, the ALJ imposed the same RFC restrictions. Specifically, the ALJ's May 9, 2017 decision found that Plaintiff can "sit no greater than 90 minutes" and that the Plaintiff "is limited to work requiring only simple instructions/tasks accommodating ninth grade literacy." (Tr. 17). Although the RFC findings differ in sentence structure and overall length, there is no appreciable difference in the underlying extent of limitations found in the May 9, 2017 decision. *Compare* (Tr. 17) *with* (Tr. 152-53). The ALJ specifically noted in the May 9, 2017 decision that there were "no new and material evidence that justifies altering the prior 2014 decisional findings" which includes the ALJ's RFC determination and his Step Five finding that Plaintiff retained the capacity to perform light work. *See* (Tr. 12). The ALJ's May 9, 2017 decision maintained the same limitations previously imposed in the 2014 decision; the Sixth Circuit precedent cited by Plaintiff requires no more. *See Drummond*, 126 F.3d 837 ("[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ"); *Dennard*, 907 F.2d 598 (holding that an ALJ was precluded from reconsidering whether a plaintiff could perform his past relevant

work). Accordingly, the ALJ properly considered Sixth Circuit precedent and the ALJ's decision complies with *Drummond* and *Dennard*.

### 3. *The ALJ did not err in assessing Plaintiff's credibility.*

Finally, Plaintiff argues that the ALJ failed to properly evaluate the Plaintiff's subjective complaints of pain in rejecting Plaintiff's argument that he now suffers from more severe impairments. (Doc. # 11-1 at 21). Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. 20 C.F.R. § 404.1529(a). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Id.* § 404.1529(c).

When a claimant's complaints regarding the intensity and persistence of his symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including lab findings, information from treating physicians, Plaintiff's complaints of symptoms, and other relevant evidence. *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996)). After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. "Blanket

assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

When medical reports or laboratory findings demonstrate that the claimant has "medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how these symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). Before making this determination, the ALJ must consider all available evidence, including objective medical evidence, claimant's own statements about symptoms, opinions from treating and examining physicians, and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c)(1)-(3). Assessing the record as a whole "helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Rogers*, 486 F.3d at 249. If the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349.

Plaintiff argues that the ALJ's May 9, 2017 RFC determination "failed to properly assess" evidence of "additional medical problems which are resulting in additional levels of pain." (Doc. # 11-1 at 21). While he asserts that there is "new information that is based

13

upon the objective medical findings from the medical records," the only "new" evidence that Plaintiff cites in support of this argument is "his own testimony regarding his pain level" as well as "the consultative exam and the letter from Ms. Nantz." *Id.* at 22.

The ALJ's analysis demonstrates that he did consider the medical evidence provided by Ms. Nantz, as well as Plaintiff's subjective complaints of pain. *See* (Tr. 18-20). At Step Four, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 18). However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ's determination was expressly informed by objective medical evidence; for instance, he explained in detail the records subsequent to the 2014 decision, including treatment entries from Kentucky Pain Physicians, Kentucky Pain Clinic, Tri-State Clinic, and the letter of LPCC Nantz. *Id.* at 18-19.

In particular, the ALJ noted Tri-State Clinic records for August and September 2015, showing that Plaintiff "stated that he felt good, TNS unit helped and he was doing physical therapy at a friend's home." *Id.* at 19. Additionally, "[o]ver the course of treatment, claimant reported low pain levels of 1-3 on the analog scale and reported improvement in overall functioning." *Id.* The ALJ further found that LPCC Nantz's letter appeared "disingenuous" when she claimed to have been seeing Plaintiff since 2013, but records indicated he received no treatment during 2016 and he only reinstated treatment in February 2017, the month preceding the disability hearing. *Id.* As a result, the ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting

effects of his symptoms were not entirely credible:

> Based on the foregoing, the undersigned concludes that the claimant's allegations are not consistent with the evidence of record; and that the medical record presents no discrete evidence of material change in medical condition. While claimant does have evidence of degenerative changes of the cervical and lumbar spine, he is appropriately and effectively medicated and obtains further relief with the use of a back brace and TENS unit. Further, he admitted to his physical therapist that back pain "comes and goes" rather than being constant as he has alleged. His level of daily activities and socialization does not reflect that of a totally disabled individual inasmuch as he is able to perform self-care, drive, and help care for a toddler. For the most part, his subjective levels of pain are 3-5/10. To the extent the third party report from Ola Mae Yates, on first hand observations of what the claimant actually does from day to day, the opinion is given some weight, but to the extent the reporter opines on what the claimant is capable of doing, the report is given no weight as the reporter is not trained to make assessments of functional ability [ ]. So as for the opinion evidence, great weight is given the prior decisional functional finding [ ] especially as the State agency nonexamining medical consultant opined that it was also reflective of claimant's current functional capacity.

The Court's role is not to re-weigh the evidence. *See Smith*, 99 F.3d at 782. Where, as here, the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's subjective complaints, his approach to treatment, and the objective medical evidence, the Court finds no error.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 14th day of August, 2018.

Signed By:
David L. Bunning
United States District Judge

L:\DATA\SocialSecurity\MOOs\London\17-273 Pennington MOO.docx